## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UFT COMMERCIAL FINANCE, LLC, and JOANNE MARIE NOREN (a/k/a Joanne Marlowe), individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 19 C 7669 |
| RICHARD A. FISHER, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Defendant Richard A. Fisher's ("Fisher") motion to dismiss Plaintiffs UFT Commercial Finance, LLC ("UFT"), and Joanne Marie Noren a/k/a Joanne Marlowe's ("Marlowe") (collectively, "Plaintiffs") complaint under Federal Rule of Civil Procedure 12(b)(6)[1] and Fisher's motion for sanctions under Federal Rule of Civil Procedure 11. For the following reasons, the Court grants the motion to dismiss and denies the motion for sanctions.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All

---

[1] Fisher's motion will be considered despite exceeding the 15-page limit imposed by Local Rule 7.1.

reasonable inferences are drawn in Plaintiffs' favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

UFT is a commercial finance company "striving to improve transparency, trust, and liquidity in the credit marketplace." UFT is a Delaware limited liability company with a principal place of business in Bannockburn, Illinois. Marlowe, an Illinois resident, founded UFT in 2008 and continues to serve as its chief executive officer ("CEO"). Fisher is a resident of Georgia and is a licensed attorney there. Fisher is a former partner and chief legal officer ("CLO") of UFT.

Fisher worked as a consultant with UFT from February 2013 until September 2013. Beginning in October 2013, Fisher became UFT's CLO. Throughout his employment, Fisher was UFT and Marlowe's sole legal counsel on issues of the company's policies and day-to-day operations. One of Fisher's duties as CLO was to draft employment agreements between UFT and its employees. In the employment agreements that Fisher drafted, including his own, Fisher included mandatory arbitration clauses.

Because the nature of UFT's work, the company often struggled to maintain a steady stream of income. Despite this, Fisher and other employees believed in UFT's mission and wanted to continue working there. As a result, Fisher drafted agreements with UFT employees regarding accrual and deferment of salaries and wages ("supplemental agreements"). Under the supplemental agreements, employees agreed

to be paid their accrued wages in the future when certain specified profit goals were met.

One such agreement led to a claim being filed in 2015 with the Illinois Department of Labor under the Illinois Wage Payment and Collection Act. Fisher defended the company and the claim was ultimately dismissed. Despite this claim, Fisher continued to advocate for the agreements. In January 2016, Fisher executed an agreement with UFT for himself, deferring $330,000 of his own compensation until the company received a substantial cash infusion.

When UFT was struggling to obtain directors and officers insurance ("D&O Insurance"), Plaintiffs claim that Fisher advised them such insurance was not necessary until the business grew substantially. Plaintiffs allege that Fisher never advised them that D&O insurance could protect Marlowe from any personal liability should the company lose a wage claim or any similar claim.

In March 2016, Marlowe and Fisher attempted to negotiate a contract extension, but the negotiations broke down. On March 26, 2016, Marlowe told Fisher that his employment with UFT would not be extended. Fisher ultimately resigned as CLO on August 7, 2016.

Fisher first initiated and subsequently withdrew proceedings before the American Arbitration Association ("AAA") in June 2017. Fisher then filed suit in this Court in December 2017 but voluntarily dismissed the case in January 2018 due to the arbitration clause. In January 2018, Fisher initiated arbitration proceedings before the

AAA regarding the accrued compensation that UFT owed him. On January 2, 2019, the AAA found that UFT and Marlowe were jointly and severally liable to Fisher under the Illinois Wage Payment and Collection Act for $864,976. UFT was further liable to Fisher for $366,460.

Plaintiffs allege that they had no reason to believe that Fisher's legal advice regarding the supplemental agreements and arbitration clauses in the employment agreements could expose them to substantial liability until the January 2019 arbitration award. Plaintiffs further allege that Fisher never advised them to retain independent counsel when executing agreements between UFT and himself. Plaintiffs believe that the arbitration award brings to light potential additional liabilities under employment agreements and supplemental agreements executed by Fisher with other UFT employees. For example, UFT claims it is exposed to $585,000 in liabilities to two employees and $990,000 in liabilities to Marlowe.

To recover their losses, Plaintiffs filed a one-count complaint in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois on October 21, 2019. Fisher removed the case to this Court on November 21, 2019, under 28 U.S.C. § 1441 and 28 U.S.C. § 1332.

In the complaint, Plaintiffs claim one count of professional negligence against Fisher. Plaintiffs allege that Fisher owed them a duty to act as a reasonably competent attorney under the circumstances, and that Fisher breached his duty in several ways by: (1) failing to fully and properly advise Plaintiffs regarding the legal consequences of

the employment and supplemental agreements, and the consequences of the arbitration clause in the various agreements he drafted, including his own employment agreement; (2) failing to act in the best interests of Plaintiffs and to properly represent Plaintiffs' interests; (3) failing to advise Plaintiffs of the conflict of interest he had in executing his supplemental agreement, and in doing so preferring his own interests over those of Plaintiffs'; (4) failing to advise Plaintiffs regarding the protection afforded by the retention of separate, independent counsel; (5) failing to advise Plaintiffs to obtain D&O insurance; (6) failing to have or gain the competence required to properly provide legal guidance concerning Illinois wage and employment laws; and (7) otherwise acting in a careless and negligent manner.

Plaintiffs also claim that in breaching his duty of care, Fisher also violated several Rules of Professional Conduct. Plaintiffs seek to recover legal fees and penalties, alleging they suffered damages in excess of $50,000. Fisher moved to dismiss the complaint on November 27, 2019 and moved for sanctions on February 4, 2020.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations,

but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Motion to Dismiss

Fisher urges the Court to dismiss Plaintiffs' complaint, arguing that: (1) the action is barred by res judicata, the statute of limitations, and the statute of repose; (2) Fisher did not owe a duty of care to Marlowe; (3) Plaintiffs did not sufficiently plead proximate cause and damages; (4) the damages as to D&O Insurance coverage are speculative; and (5) the "catch-all" allegations are improper. We address each argument in turn.

### A. Whether the Action is Barred

#### i. Res Judicata

Fisher first argues that the judgment in the underlying arbitration forecloses litigation of the instant case. Fisher contends that the causes of action are the same, the identities of the parties are identical, and there was a final judgment on the merits. Plaintiffs agree that the identities of the parties are identical and that the arbitration award was a final judgment on the merits. However, Plaintiffs argue that the causes of actions are different because the facts necessary for proof are different and the instant cause of action did not arise until the arbitration award was entered. We agree with Plaintiffs.

Res judicata is an affirmative defense and the plaintiff need not plead around affirmative defenses. *See United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P. 8(c). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *United States Gypsum*, 350 F.3d at 626. Thus, the doctrine of res judicata may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) where the instant complaint opens the door by referencing prior proceedings that form the basis for applying the doctrine. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

A res judicata defense often requires the court to consider matters outside the complaint and a motion raising such a defense must ordinarily be treated as one for summary judgment. *Clark & Leland Condominium, L.L.C. v. Northside Cmty. Bank*,

110 F. Supp. 3d 866, 868 (N.D. Ill. 2015). In addition to the complaint, however, a court may consider documents attached to the motion to dismiss which are referenced in the complaint and are central to the plaintiff's claim. *Plastic Recovery Techs., Co. v. Samson*, 2011 WL 3205349, at \*2 (N.D. Ill. 2011) (Kocoras, J.) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)) (considering an arbitration award on a Rule 12(b)(6) motion to dismiss due to res judicata). Accordingly, we find it appropriate to consider the res judicata argument on Fisher's motion to dismiss because Fisher attached the arbitration award to his motion, Plaintiffs repeatedly reference the arbitration award in their complaint, and the arbitration award is central to Plaintiffs' claim for damages.

The doctrine of res judicata or claim preclusion "prohibits parties 'from re-litigating issues that were or could have been raised in' a previous action in which there was a final judgment on the merits." *Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (*quoting Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006)). This doctrine requires claims that are based "on the same, or nearly the same, factual allegations" to be joined. *Id.* (*citing Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)). Under Illinois law, res judicata applies to bar a subsequent action when the following requirements are met: (1) there is an identity of causes of action; (2) there is an identity of parties or their privies; and (3) a final judgment on the merits. *See Johnson*, 641 F.3d at 874 (internal citations omitted); *Highway J*, 456 F.3d at 741 (internal citations omitted). If these elements are

8

satisfied, the prior judgment precludes claims that could have been, but were not, litigated in the first suit. *Kykta v. Ciaccio*, 633 Fed. Appx. 340, 343 (7th Cir. 2015).

A claim has "identity with a previously litigated matter if it emerges from the same core of operative facts as that earlier action." *Highway J Citizens Grp. v. United States DOT*, 456 F.3d 734, 741 (7th Cir. 2006). "A cause of action is defined by the facts that give rise to a right to relief. Though one group of facts may give rise to a number of different theories of recovery, there remains a single cause of action." *Wilson v. Edward Hosp.*, 367 Ill. Dec. 243, 247 (2012). Illinois courts utilize a transactional test when deciding whether there is identity between causes of action. *Village of Bartonville v. Lopez*, 413 Ill. Dec. 34, 45 (2017).

"Under the transactional test, the assertion of different theories or kinds of relief still constitute a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. "[I]f the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different cause of action asserted and res judicata bars the latter action." *Morris v. Union Oil Co*., 96 Ill. App. 3d 148, 157 (1981).

Here, the arbitration and the instant case are two different causes of action under Illinois's transactional test. The arbitration proceedings required a determination of whether Fisher was entitled to wages under the supplemental agreement and the Illinois Wage Payment and Collection Act. That determination, in turn, required interpretations of Fisher's employment agreement and supplemental agreement. The instant case, on

9

the other hand, requires a determination as to whether Fisher was negligent in giving, or failing to give, legal advice to Plaintiffs.

Moreover, the instant cause of action did not accrue until the arbitration proceedings ended. "Illinois courts have frequently recognized, either expressly or implicitly, a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Lucey v. Law Offices of Pretzel & Stouffer, Chartered.*, 301 Ill. App. 3d 349, 356 (1998). Thus, Plaintiffs did not suffer any damages giving rise to the cause of action against Fisher until the arbitration award was announced. Therefore, the case is not barred by res judicata.

### ii. Statute of Limitations

Fisher urges the Court to dismiss the complaint because it was filed more than two years after Plaintiffs became aware of Fisher's wage claim action. Plaintiffs argue that the statute of limitations was tolled under the discovery rule until January 2, 2019. We agree.

Though motions to dismiss for failure to state a claim do not usually address affirmative defenses, "the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009). Plaintiffs' complaint sets forth all of the relevant dates needed to establish Fisher's statute of

limitations defense. Therefore, we find it appropriate to consider the statute of limitations in the context of Fisher's motion to dismiss.

Fisher argues that Plaintiffs became aware of the claim in June 2017 when the first arbitration proceeding was commenced. The statute of limitations begins to run when the purportedly injured party "has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23. A person knows or reasonably should know an injury is "wrongfully caused" when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Id*. "For purposes of a legal malpractice action, a client is not considered to be injured unless and until he [or she] has suffered a loss for which he [or she] may seek monetary damages." *N. Ill. Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005).

Plaintiffs could not have reasonably known that they were injured until they lost the arbitration proceeding on January 2, 2019, because the cause of action for legal malpractice did not accrue until that date. Plaintiffs filed suit on October 21, 2019, within Illinois's 2-year statute of limitations for legal malpractice. 735 ILCS § 5/13-214.3(b). Accordingly, Plaintiff's complaint is timely under the statute of limitations.

### iii. Statute of Repose

Fisher argues that the complaint is untimely under the statute of repose because it was filed more than 6 years after the Fisher's employment agreement was executed.

Plaintiffs argue that the complaint should not be dismissed because the complaint does not make clear what dates each alleged act or omission occurred. We disagree in part.

Like the statute of limitations, the statute of repose may only be considered when the complaint makes clear the necessary dates for the application of the statute. *See Tregenza v. Great Am. Commc'ns Co.,* 12 F.3d 717, 719 (7th Cir. 1993). In Illinois, the statute of repose for legal malpractice is six years from the date of the alleged act or omission. 735 ILCS § 5/13-214.3(c); *Terra Found. for Am. Art v. DLA Piper LLP*, 2016 IL App (1st) 153285, ¶ 28. "A statute of repose is intended to place a limit on the period of time for commencing suit regardless of a potential plaintiff's lack of knowledge of his cause of action." *Id.* at ¶ 29 (internal quotation marks omitted). "The statute of repose in a legal malpractice case begins to run as soon as an event giving rise to the malpractice claim occurs, regardless of whether plaintiff's injury has yet been realized." *Id.* at ¶ 31. Moreover, the statute of repose is not tolled by the discovery doctrine or because of the continuation of the attorney-client relationship. *Id.* at ¶¶ 29, 31.

The complaint makes clear at least one date of Fisher's actions. The complaint states that Fisher drafted his employment agreement with UFT, which was executed on October 1, 2013. Plaintiffs allege that Fisher did not advise them of the consequences of the arbitration clause in his employment agreement. This omission occurred on or before October 1, 2013, more than six years before the instant case was initiated on

October 21, 2019. Accordingly, any allegations of negligence related to the negotiation and execution of Fisher's employment agreement are barred by the statute of repose.

However, the complaint does not make clear when the remaining claims occurred. For example, the complaint alleges that Fisher made recommendations concerning the deferral of wages "at various times" during his employment with UFT. Accordingly, it is improper to consider the statute of repose in regards to these claims at this time.

### B. Legal Malpractice

Fisher next argues that Plaintiffs fail to state a claim for legal malpractice because Fisher did not owe Marlowe a duty of care and Plaintiffs failed to establish proximate cause and damages. We address each argument in turn.

### i. Duty Owed to Marlowe

Fisher first urges the Court to dismiss Marlowe's claims against him, arguing that Marlowe was a third party to whom no duty was owed, and that he did not owe her a duty in her individual capacity. Marlowe argues that she was Fisher's client because he was the sole source of legal advice for her and UFT, she reasonably relied on that legal advice, and, therefore, Fisher owed her a duty. We disagree.

The elements of legal malpractice in Illinois are "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages." *TIG Ins. Co. v. Giffin Winning Cohen & Bodewes, P.C.*, 444 F.3d 587, 590–91 (7th Cir.

2006) (citing *Lopez v. Clifford Law Offices,* 362 Ill. App. 3d 969, 974-75 (1st Dist. 2005)). Ordinary negligence principles apply in a legal malpractice case. *Id.* at 591.

Whether a duty exists is a question of law for the court to decide. *Washington v. City of Chi.*, 188 Ill. 2d 235, 239 (1999). "[U]nless a duty is owed, there is no negligence, and plaintiffs cannot recover as a matter of law." *Id.* (internal citations omitted). To show a duty on behalf of an attorney in a legal malpractice action, the plaintiff must plead that there was an attorney-client relationship. *Blue Water Partners, Inc. v. Edwin D. Mason, Foley & Lardner*, 2012 IL App (1st) 102165, ¶ 38. An attorney for an organization owes a duty to the organization, and not its individual shareholders, officers, or directors. *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 270 (1st Dist. 1995).

Nevertheless, "if a nonclient is an intended third-party beneficiary of the relationship between the client and the attorney, the attorney's duty to the client may extend to the nonclient as well." *In re Estate of Powell*, 2014 IL 115997, ¶ 14. "The key consideration is whether the attorney is acting at the direction of or on behalf of the client to benefit or influence a third party." *Id.* The Illinois Supreme Court has made clear that "'for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party.'" *Id.* (quoting *Pelham v. Griesheimer*, 19 Ill. 2d 13, 19 (1982).

Under the forgoing principles, Marlowe's complaint must allege that the primary purpose of Fisher's legal work for UFT was for her benefit in her individual capacity.

14

The complaint does not so allege. Instead, the complaint alleges that, "Fisher was the sole source of legal counsel to both the Company and Marlowe as to the day-to-day policies and operations *of the Company*." (emphasis added). Therefore, Fisher's duty is owed to UFT, acting through its officers, such as Marlowe. *See* Illinois Rules of Professional Conduct of 2010, R. 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."). This is further evidence by the employment agreement attached to the complaint, which makes clear that Fisher represents UFT. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) ("When ruling on a motion to dismiss, the court may consider documents attached to the complaint") (internal quotations and alterations omitted).

Marlowe has not alleged any facts to show that she asked Fisher to represent her in an individual capacity, *i.e.* not as CEO of UFT, nor has she alleged any facts to show that Fisher advised her on any personal legal issues. Therefore, Fisher did not owe a duty to Marlowe in her individual capacity and Marlowe fails to state a claim of professional negligence against Fisher. Accordingly, Marlowe's claim against Fisher is dismissed.

### ii. Proximate Cause

Fisher next argues that Plaintiffs failed to establish proximate cause because they did not plead that "but-for" Fisher's alleged negligence, they would have won the underlying arbitration. Plaintiffs respond that Fisher uses the wrong standard for a

transactional legal malpractice claim, and that "but-for" Fisher's negligence regarding the employment agreements and supplemental agreements, Plaintiffs would not have suffered damages. We agree that Plaintiffs have not established proximate cause for some of their claims.

Unlike in a litigation-based legal malpractice case, a plaintiff in a transaction-based legal malpractice case is not always required to prove a case-within-a-case to establish proximate cause. *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 344(2010); *Mizrachi v. Ordower*, 2020 WL 1914646, at *4 (N.D. Ill. 2020). "If an attorney's advice falls below the standard of reasonable legal services, any damages which proximately flow from the client's acceptance of that advice are recoverable in a negligence action against the attorney." *Metrick,* 266 Ill. App. 3d at 655. However, "an attorney's liability for failing to advise a client of the foreseeable risks attendant to a given course of legal action is not predicated upon the impropriety of the recommended course of action; rather it is predicated upon the client's exposure to a risk that the client did not knowingly and voluntarily assume." *Id.* at 654–55. Therefore, to establish proximate cause in such a case, the plaintiff must plead that had the undisclosed risk been known, the plaintiff "would not have accepted the risk and consented to the recommended course of action." *Id.* at 655.

Here, Plaintiffs allege that Fisher failed to fully advise Plaintiffs on the consequences of using arbitration clauses in employment agreements, the consequences of supplemental agreements, the need for an independent counsel for negotiations

16

between Fisher and UFT, and the protections of D&O Insurance. Had they been fully advised of the consequences of using arbitration clauses, Plaintiffs allege that they would not have used them. However, Plaintiffs do not allege that they would have opted against using the supplemental agreements, would have retained independent counsel, or would have obtained D&O Insurance had Fisher fully advised them.

Accordingly, Plaintiffs have failed to plead proximate cause with regards to the supplemental agreements, D&O Insurance, and independent counsel. However, Plaintiffs have sufficiently plead proximate cause with regards to the employment agreements. Having so found, we restrict our analysis of the damages issue to the employment agreements.

### iii. Damages

With regards to the employment agreements, Fisher argues that Plaintiffs have not sufficiently plead damages. We agree.

The existence of actual damages is essential to a claim of legal malpractice. *N. Ill. Emergency Physicians.*, 216 Ill. 2d at 307; *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). Actual damages are never presumed in a legal malpractice case. *N. Ill. Emergency Physicians*, 216 Ill. 2d at 307. Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. *Id.*

Plaintiffs have not alleged any damages stemming from the employment agreements with employees besides Fisher. Plaintiffs state that the arbitration award

17

"brings to light" additional liabilities under the supplemental agreements and state amount of liabilities to certain employees. However, Plaintiffs do not allege that these damages have actually been realized, or that these damages result from the arbitration clauses in the employment agreements. Therefore, Plaintiffs have failed to sufficiently plead damages. Accordingly, Plaintiffs have failed to state a claim of legal malpractice against Fisher with respect to the employment agreements.

### C. Remaining Arguments

Because the Court dismisses Plaintiffs' claims, we need not address the remaining arguments in the motion to dismiss.

### II.    Motion for Sanctions

Fisher moves for sanctions against Plaintiffs and Plaintiffs' attorneys under Federal Rule of Civil Procedure 11, arguing that Plaintiffs' complaint is "devoid of evidentiary support and [asserts] claims unsupported by law," and that the case was initiated to retaliate against Fisher. Plaintiffs and their attorneys argue that the motion is procedurally deficient because the complaint was filed in state court, and that the claims are not frivolous and are not brought for an improper purpose.

Rule 11(b) requires that an attorney or party "certify to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and the allegations and other factual

contentions have evidentiary support." *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003). "[A] court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. In particular, a frivolous argument of claims is one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990)). Rule 11 sanctions are to be imposed sparingly. *Hartmax Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

Rule 11 sanctions may not be imposed on an attorney for merely signing and filing a state court complaint that defendants subsequently remove to federal court. *Macosiak v. Blue Cross and Blue Shield Utd. Of Wis.*, 930 F.2d 536, 541 (7th Cir. 1991). However, sanctions may be imposed for filing briefs in support of such a complaint. *See id.* at 542-42.

We do not believe that the claims brought by Plaintiffs are wholly baseless or frivolous. This case presents a unique set of circumstances in that both Plaintiffs and Fisher were parties to the underlying arbitration that gave rise to alleged legal malpractice. Plaintiff's counsel asserted arguments supported by legal authorities to argue facts that give rise to a cause of action. While the facts and arguments were insufficient under Rule 12(b)(6), the Plaintiffs claims were not so unmeritorious as to merit sanctions. Although the parties appear to have a long adversarial history, it does not appear that this suit was brought for the sole purpose of harassing and embarrassing

19

Fisher.  Plaintiffs appear to believe that some of Fisher's actions while employed by UFT may have constituted legal malpractice.  Accordingly, Fisher's motion for sanctions is denied.

## **CONCLUSION**

For the reasons mentioned above, the Court grants Fisher's motion to dismiss and denies his motion for sanctions.  It is so ordered.

Dated:  05/15/2020

_____
Charles P. Kocoras
United States District Judge